NO. COA13-811

NORTH CAROLINA COURT OF APPEALS

Filed: 7 January 2014

STATE OF NORTH CAROLINA

    v.

TRAVIS MELTON SHERMAN,
    Defendant.

Wake County
No. 10 CRS 223385

Appeal by defendant from judgment entered 16 August 2012 by Judge Paul C. Ridgeway in Wake County Superior Court. Heard in the Court of Appeals 9 December 2013.

> *Roy Cooper, Attorney General, by Jonathan P. Babb, Special Deputy Attorney General, for the State.*
>
> *Glover & Petersen, P.A., by James R. Glover and Ann B. Petersen, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant Travis Melton Sherman was charged with the murder of Kenneth Edward Ring in violation of N.C.G.S. § 14-17. A jury found defendant guilty of first-degree murder, and judgment was entered on the verdict sentencing him to life imprisonment without parole. He appeals.

The facts relevant to the sole issue presented on appeal involve two of defendant's for-cause challenges to prospective jurors. First, defendant moved to excuse prospective juror Mark

Antonelli for cause because Mr. Antonelli said he would form opinions during the trial. The trial judge, after questioning Mr. Antonelli, denied defendant's motion, and as a result, defendant used a peremptory challenge to excuse Mr. Antonelli.

Next, defendant moved to excuse prospective juror Timothy Brunstetter for cause because he had orders from the United States Marine Corps to report to Quantico, Virginia, before the projected end of the trial. The trial judge denied this motion, and defendant used his sixth and final peremptory challenge to excuse Mr. Brunstetter.

After defendant used all six of his peremptory challenges, he renewed his motion to remove Mr. Antonelli and Mr. Brunstetter for cause. The trial judge again denied both motions, and defendant asked for additional peremptory challenges. The court refused to give defendant additional peremptory challenges. Later, defendant renewed his request for additional peremptory challenges so he could use one to excuse a prospective juror. The judge again denied the request for additional peremptory challenges. Defendant appeals.

_____

On appeal defendant argues only one issue. He maintains that the trial court's failure to allow his for-cause challenges to prospective jurors Mr. Antonelli and Mr. Brunstetter was

prejudicial error that requires a new trial.  We disagree.

For a defendant to seek reversal of a judgment based on a trial court's refusal to allow his for-cause challenges, the defendant must comply with N.C.G.S. § 15A-1214(h).  Compliance with N.C.G.S. § 15A-1214(h) is mandatory and is the only way to preserve for appellate review the denial of a for-cause challenge. *State v. Sanders*, 317 N.C. 602, 608, 346 S.E.2d 451, 456 (1986). Section 15A-1214 requires that

> (h) In order for a defendant to seek reversal of the case on appeal on the ground that the judge refused to allow a challenge made for cause, he must have:
>
> > (1) Exhausted the peremptory challenges available to him;
> >
> > (2) Renewed his challenge as provided in subsection (i) of this section; and
> >
> > (3) Had his renewal motion denied as to the juror in question.
>
> (i) A party who has exhausted his peremptory challenges may move orally or in writing to renew a challenge for cause previously denied if the party either:
>
> > (1) Had peremptorily challenged the juror; or
> >
> > (2) States in the motion that he would have challenged that juror peremptorily had his challenges not been exhausted.

N.C. Gen. Stat. § 15A-1214(h)-(i) (2011).

A review of the transcript reveals that defendant complied

with N.C.G.S. § 15A-1214(h). He moved to excuse Mr. Antonelli for cause, and the court denied that motion. Defendant then used a peremptory challenge to excuse Mr. Antonelli. Defendant also moved to excuse Mr. Brunstetter for cause, and the court denied that motion. As a result, defendant used his final peremptory challenge to excuse Mr. Brunstetter. After defendant used his final peremptory challenge, he renewed his motions to excuse Mr. Antonelli and Mr. Brunstetter for cause, and the court denied both motions. Therefore, defendant has complied with the provisions of N.C.G.S. § 15A-1214(h).

N.C.G.S. § 15A-1212 lists the grounds for challenges for cause to a prospective juror. "We review a trial court's ruling on a challenge for cause for abuse of discretion." *State v. Lasiter*, 361 N.C. 299, 301, 643 S.E.2d 909, 911 (2007). A trial court abuses its discretion when its ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1998). When we review a trial judge's ruling we consider only whether it is supported by the record, not whether we agree with the ruling. *Lasiter*, 361 N.C. at 302, 643 S.E.2d at 911. This is a deferential standard of review because a trial judge has the advantage of interacting with a juror. *Id.*

Defendant argues that Mr. Antonelli should have been excused

for cause because he responded that he would form opinions during the trial, which would substantially impair his ability to follow and apply the law. Defendant fails to state the statutory ground upon which he is relying for his for-cause challenge, but, for two reasons, it is implied that he is relying on N.C.G.S. § 15A-1212(8), which allows a for-cause challenge when, "[a]s a matter of conscience, . . . [a juror] would be unable to render a verdict with respect to the charge in accordance with the law of North Carolina." N.C. Gen. Stat. § 15A-1212(8) (2011). First, defendant argues that forming opinions during trial would impair Mr. Antonelli's ability to apply the law of North Carolina. Second, defendant cites *Witherspoon v. Illinois*, 391 U.S. 510, 20 L. Ed. 2d 776 (1968), in support of his argument, which the General Assembly codified at N.C.G.S. § 15A-1212(8). N.C. Gen. Stat. § 15A-1212 official commentary (2011). Therefore, while defendant fails to state that he is relying on N.C.G.S. § 15A-1212(8), we infer he is relying on N.C.G.S. § 15A-1212(8) based on his argument.

A review of the transcript reveals the following relevant exchanges:

> MR. DOLAN: Let me ask you this: . . . Can you be sure that you would wait until all of the evidence was presented before you came and started to make any decision in this case?

> [MR. ANTONELLI]: I don't think I could

guarantee that, but I think I would be able to, but I couldn't guarantee it.

MR. DOLAN: What do you mean you don't think you [can] guarantee it?

[MR. ANTONELLI]: Well, because you form opinions as it goes on and it changes.

MR. DOLAN: And are you saying that you think you would form opinions as the case went on?

[MR. ANTONELLI]: Probably.

. . . .

MR. DOLAN: . . . Are you saying you don't think that you can wait, that you're probably going to form opinions along the way?

[MR. ANTONELLI]: Most likely.

MR. DOLAN: I would move for cause, your Honor.

. . . .

THE COURT: Yes.
Mr. Antonelli, let me follow-up with just a question for you. You've already heard me instruct several times to that one of the rules you have to follow is to [sic] not form or express any opinions about the outcome of this case, and there are a number of important steps that a case must go through. There is the evidence, there is the arguments of counsel, there is my instructions on the law, and then there's deliberation. What we require of jurors is the ability to keep an open mind and not form or express opinions until they get into the jury deliberation room, engage in deliberation with their fellow jurors, consider all of the things I've just described. Do you believe that you could fulfill that duty as a juror?

[MR. ANTONELLI]: Yes, but I believe I would

still form an opinion but can still be open-minded.

THE COURT: In the event that you were instructed on the law or persuaded by an argument or persuaded by evidence later in the trial that your opinion was perhaps in error, would you be able to set aside any opinion that you had formed and listen to either of the evidence or the instructions or the argument or the deliberation in views of your fellow jurors? Would you be able to set aside any opinion that you had formed and render a verdict according to the instructions, the law, and the argument and the evidence?

[MR. ANTONELLI]: I believe so. I can't guarantee that, but I believe so.

THE COURT: And when you say you can't guarantee that, what do you mean by that?

[MR. ANTONELLI]: I've never been through this so I don't know how my opinion is going to form . . .

. . . .

THE COURT: Are you willing to follow my instructions to keep an open mind throughout this case?

[MR. ANTONELLI]: Yes.

THE COURT: I'm going to deny the motion for cause at this time.

MR. DOLAN: I just want to be clear, Mr. Antonelli, and I'm not trying to pick on you. Is it your position that you will form an opinion as the case progresses?

[MR. ANTONELLI]: I would probably say most likely, yeah, I would form an opinion as it was going on, but I can't guarantee that I definitely will.

The above-quoted portion of voir dire demonstrates that the trial court did not abuse its discretion when disallowing the for-cause challenge. The trial judge was in the best position to observe Mr. Antonelli and to weigh and decide the credibility of his responses. The judge's denial of the for-cause challenge to Mr. Antonelli is logically supported by his response that he was willing to follow the judge's instructions. Therefore, the trial court did not err when disallowing defendant's for-cause challenge to Mr. Antonelli.

Next, defendant argues, without citing any statutory authority or case law, that the trial court erred when it denied his for-cause challenge to Mr. Brunstetter because he was a Marine with orders to report to Quantico, Virginia, before the projected end of the trial. We assume that defendant is relying on the catch-all provision of N.C.G.S. § 15A-1212 for his challenge, which allows a for-cause challenge when a juror "[f]or any other cause is unable to render a fair and impartial verdict." N.C. Gen. Stat. § 1212(9).

Our Supreme Court considered whether a prospective juror could render a fair verdict because he was concerned about the estimated time of the trial in *State v. Reed*, 355 N.C. 150, 160, 558 S.E.2d 167, 174 (2002), *appeal after remand*, 162 N.C. App. 360, 590 S.E.2d 477 (2004). The Court concluded that the trial

court did not abuse its discretion when it denied the for-cause challenge. *Id.* In reaching this conclusion, the Court noted that trial judges routinely decide whether to excuse a prospective juror because of concerns about the length of a trial. *Id.* Also, in *Reed*, despite the estimated length of the trial, the prospective juror stated that he could be fair to both sides. *Id.*

In this case, the trial court did not abuse its discretion in refusing to allow the for-cause challenge. Mr. Brunstetter twice asserted that despite his orders to report to Quantico, Virginia, he could focus on the trial if he was selected to be a juror. Also, the trial court was able to observe Mr. Brunstetter when he made these statements. Therefore, based on Mr. Brunstetter's testimony, the trial court properly denied the challenge because Mr. Brunstetter could render a fair verdict despite his concerns about the length of the trial.

No Error.

Judges ERVIN and MCCULLOUGH concur.